UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES LABOY,<br>　　　　Plaintiff, | :<br>:<br>: |
| v. | : 　CASE NO. 3:18-cv-361 (KAD) |
| BEAULIEU, et al.,<br>　　　　Defendants. | :<br>:<br>: |

**MEMORANDUM OF DECISION RE: DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**Preliminary Statement**

The plaintiff, James Laboy ("Laboy"), commenced this civil rights action asserting claims for violation of his constitutional and statutory rights against the defendants, school principal Beaulieu and school area officer Brown. Following the Court's, Thompson, D.J., initial review, two claims remained: (1) a due process claim arising from his removal from the school program; and (2) a claim that the defendants violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a), by dismissing him from the school program for medical issues relating to his disability. The defendants filed a motion for summary judgment to which Laboy objected. For the following reasons, the defendants' motion is GRANTED.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir.

2012). "When the nonmoving party will bear the burden of proof at trial, the moving party can satisfy its burden at summary judgment by 'pointing out to the district court' the absence of a genuine dispute with respect to any essential element of its opponent's case: 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Cohane v. National Collegiate Athletic Ass'n*, 612 F. App'x 41, 43 (2d Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted). He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts[1]**

---

[1] The facts are taken from the defendants' Local Rule 56(a)1 Statement and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and

Laboy was incarcerated at MacDougall-Walker Correctional Institution ("MacDougall") at all times relevant to this action. Doc. No. 20-4, ¶ 1. Defendant Beaulieu was the school principal at MacDougall and defendant Brown worked at MacDougall as a correctional officer. *Id.*, ¶¶ 2-3.

On July 14, 2017, Laboy enrolled in the MacDougall school program to obtain his GED. *Id.*, ¶ 4. All inmates participating in the school program are required to sign a contract acknowledging the rules and regulations of the school program, including rules pertaining to absences. *Id.*, ¶ 5. Laboy signed such a contract on July 5, 2017. *Id.*, ¶ 6.

Laboy attended the morning school session which ran from 8:00 a.m. until 11:00 a.m. *Id.*, ¶ 7. For the first ten days of the session, Laboy reported to the medical unit at 11:00 a.m., when the school session concluded. *Id.*, ¶ 8. Beginning July 26, 2017, Laboy requested permission to leave school every day at 10:00 a.m. to go to the medical unit. *Id.*, ¶ 9. By leaving in the middle of the session, Laboy missed school time and disrupted the class. *Id.*, ¶ 10.

Defendant Beaulieu discussed these repeated absences with Laboy. *Id.*, ¶ 11. She told him that the repeated absences were disrupting the class and that, because of repeated absences, he would be removed from the class. *Id.*, ¶ 12. Defendant Beaulieu offered to switch Laboy to the afternoon session. *Id.*, ¶ 13. Laboy refused the offer. *Id.*, ¶ 14.

On August 3, 2017, defendant Beaulieu removed Laboy from the school program. *Id.*, ¶

---

56(a)3. Although the defendants informed Laboy of this requirement, Doc. No. 20-5, he has not submitted the required Local Rule 56(a)2 Statement. Accordingly, the defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

15. This action was intended to enable Laboy to work with medical staff to regulate his medical condition. *Id.*, ¶ 16. The removal form specifically stated that Laboy could return to the school program once his medical condition had stabilized. *Id.*, ¶ 17. Defendant Beaulieu acted alone in removing Laboy from the school program. Defendant Brown was not involved in the decision. *Id.*, ¶ 18.

On September 21, 2017, Laboy re-enrolled in the school program to obtain his GED, this time attending the afternoon session. *Id.*, ¶ 19. On March 21, 2018, Laboy successfully earned his GED. *Id.*, ¶ 20.

**Discussion**

Laboy asserts claims for violation of his rights under the ADA, RA, and Fourteenth Amendment. For relief he seeks damages and an injunction ordering the defendants "to comply with the A.D.A. laws, to not discriminate against [him], to treat [him] equally, to allow [him] due process before any future exclusion from programs/school … and to not subject [him] to cruel and unusual punishment." Doc. No. 1 at 17. The defendants move for summary judgment. They argue that Laboy's ADA and RA claims are moot to the extent he seeks injunctive relief because he has secured his GED; are otherwise unfounded, and that there was no violation of the Due Process Clause as a matter of law.

**ADA and RA Claims**

The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *Messier v. Southbury Training Sch.,* 562 F. Supp. 2d 294, 320 & n.13 (D.

4

Conn. 2008). Because the standards under both statutes are the same, courts treat claims under the ADA and RA identically. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. This provision applies to state prisoners. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). To state a cognizable ADA claim, Laboy must establish three factors: (1) he is a qualified person with a disability; (2) the Department of Correction is an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disability. *Henrietta D.*, 331 F.3d at 272. In addition, to obtain damages against a state actor in their official capacity, the claimant must establish that "the violation was motivated by discriminatory animus or ill will due to the disability." *Garcia v. SUNY Health Crises Center*, 280 F.3d 98, 111-12 (2d Cir. 2001).

In their motion for summary judgment, the defendants do not dispute Laboy's allegation that he has a qualifying disability.[2] Nor do they argue that the Department of Correction is not subject to the ADA. Where the parties disagree, is whether the defendants denied Laboy the opportunity to participate in the school program in violation of the ADA.

"A qualified individual can base a discrimination claim on any of "three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009). In the

---

[2] Laboy alleged that he suffers from diabetes and that he has no control over spikes and drops in his blood sugar levels which cause blurred vision, dizziness, and lightheadedness and require immediate medical attention.

Complaint, Laboy alleged that the defendants discriminated against him by removing him from the school program. While he did not allege a failure to make a reasonable accommodation, the Court addresses both the first and third theories. Laboy's claims fail under either theory because Laboy was offered a reasonable accommodation, and when he took it, he was able to obtain his GED.

"Title[ ] II ... of the ADA prohibit[s] discrimination against qualified disabled individuals by requiring that they receive reasonable accommodations that permit them to have access to and take a meaningful part in public services and public accommodations." *Powell v. National Bd. of Med. Examiners,* 364 F.3d 79, 85 (2d Cir. 2004) (internal quotation marks omitted). A reasonable accommodation need not be perfect. It only needs to be effective. *See Dean v. University at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015). The reasonable accommodation requirement is meant to put people with disabilities "on an even playing field with the non-disabled," but "it does not authorize a preference for disabled people generally." *Felix v. New York City Transit Auth.,* 324 F.3d 102, 107 (2d Cir. 2003).

As a preliminary matter, Defendant Beaulieu submitted an affidavit in which she states that she, alone, made the decision to remove Laboy from the school program and that Defendant Brown played no role in the decision. Laboy provides no contrary evidence. Thus, there is no genuine issue of material fact that Brown is entitled to judgment as a matter of law on all claims.[3] Both the ADA/RA claim and the due process claim derive entirely from Laboy's

---

[3]Laboy alleges that defendant Brown verbally harassed him because of his disability and daily trips to the medical unit, brought his absences from class to defendant Beaulieu's attention, and was pleased when he was dismissed from the school program. Compl., ¶¶ 4-5, 8, 10-12. The ADA "cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities." *Camarillo v. Carrols Corp.,* 518 F.3d 153, 157 (2d Cir. 2008) (internal quotation marks omitted).

removal from the morning GED program.

As to Beaulieu, contrary to Laboy's allegations, he was not denied the ability to participate in the school program. The defendants have submitted evidence that Laboy was admitted to the afternoon program in September 2017 and received his GED in March 2018. In addition, before Laboy was initially dismissed from the program to address his medical issues, he was offered a reasonable accommodation, the opportunity to switch to the afternoon session of the school program. He decided to decline this accommodation.

In sum, the undisputed evidence demonstrates that defendant Beaulieu offered Laboy a reasonable accommodation that he initially refused but later accepted, and ultimately received his GED. Finally, there is absolutely no evidence of animus on the part Beaulieu. The defendants' motion for summary judgment is granted on the ADA/RA claim.

**Due Process Claim**

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated," the right of due process attaches. *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70 (1972). "But the range of interests protected by procedural due process is not infinite." *Id.* at 570. The first question therefore is whether Laboy has identified the deprivation of a protected liberty or property interest. *Id.*

In the Initial Review Order, the Court recognized that Article eighth, section 1 of the Connecticut Constitution provides an affirmative right to a free public education, and that state statutes require the Commissioner of Correction to provide academic educational programs for Connecticut inmates. Based on these provisions, the Court concluded that Laboy had plausibly

alleged a protected property interest in the GED program. Doc. No. 9 at 11-12.

On this issue, the defendants argue that the Commissioner is required to provide academic educational programs only for a certain class of inmates and Laboy is not in that class. The defendants point to Administrative Directive 10.2, section 11, entitled "Access to Educational Services," which requires the Department of Correction to "provide a comprehensive education program available to all inmates who have not obtained a high school diploma or GED or to individuals who have been identified as in need of special education and related services and who are under the age of 22. [The Department of Correction] "may provide educational programs to all other inmates." https://portal.ct.gov/DOC/AD/AD-Chapter-10 (last visited Apr. 22, 2019). The defendants argue that the phrase "and who are under the age of 22" qualifies both types of inmates for whom services are mandated. Laboy is 32 years old and, therefore, they aver, does not qualify for the mandatory educational program and has no protected interest therein. The Court need not resolve this issue.

For purposes of the Procedural Due Process claim, the Court will assume, without finding, that Laboy had a protected property interest in participating in the GED program. However, no deprivation of this interest occurs unless there is a "total exclusion from the educational process for more than a trivial period." *Goss v. Lopez*, 419 U.S. 465, 576 (1975). Applying *Goss*, courts within the Second Circuit have held that students have no protected property interest in participation in a particular academic class or extracurricular program. *See, e.g.*, *Doe v. United States Sec'y of Transp.*, 17-CV-7868(CS), 2018 WL 6411277, at *12 (S.D.N.Y. Dec. 4, 2018) (dismissing due process claim based in inability to attend music class or go on field trips); *Kajoshaj v. City of New York*, No. 11-CV-4780(FB)(JMA), 2013 WL

8

249408, at *4 (E.D.N.Y. Jan. 23, 2013) (no protected property interest in avoiding repeating fifth grade); *Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 82 (W.D.N.Y. 1997) (holding that due process protects against total exclusion from educational process and denying due process claim based on exclusion from marching band).[4]

These cases are instructive because Laboy was not completely excluded from the GED program. He was excluded from only the morning session. He was offered the opportunity to continue in the program in the afternoon session. Had he accepted this offer, there would have been no interruption to his participation in the GED program. So even assuming Laboy had a protected property interest in the GED program generally, he did not have a protected property interest in a particular time slot, i.e. the morning session of the program. As previously noted, "the range of interests protected by procedural due process is not infinite." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70 (1972). Accordingly, there was no deprivation of a protected property interest to trigger Fourteenth Amendment procedural due process rights. Beaulieu is entitled to judgment as a matter of law.

Having found no protected property interest at issue, the court need not reach the question of what process was due. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (court "need reach the question of what process is due only if the inmates establish a constitutionally protected … interest").

---

[4] Although these cases do not involve claims by prisoners, there is no reason to believe that an inmate's protected property interest in educational services is greater than that of a student in a public school setting. Indeed, the opposite is likely true. *See Wolff v. McDonnell,* 418 U.S. 539, 555 (1974)("But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. … [T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.")

**Conclusion**

The defendants' motion for summary judgment [**Doc. No. 20**] is **GRANTED** in its entirety. The Clerk of the Court is directed to enter judgment and close this case.

**SO ORDERED** this 10th day of May 2019 at Bridgeport, Connecticut.

/s/
Kari A. Dooley
United States District Judge